# UNITED STATES DISTRICT COURT

## DISTRICT OF MAINE

| | | |
|---|---|---|
| INTERNAL REVENUE SERVICE, | ) | |
| | ) | |
| APPELLANT | ) | |
| | ) | CIVIL NO. 2:16-CV-08-DBH |
| v. | ) | (BANKR. NO. 05-22363) |
| | ) | (BANKR. ADV. NO. 11-2020) |
| WILLIAM CHARLES MURPHY, | ) | |
| | ) | |
| APPELLEE | ) | |

## DECISION AND ORDER ON BANKRUPTCY APPEAL

This bankruptcy appeal presents two primary questions: (1) how to interpret the term "willfully" in a federal statute; (2) whether a lawyer's unrecognized cognitive impairment that comes to light only later can be used to upset an interlocutory ruling that may have resulted from the lawyer's inadequate representation during the cognitive impairment.

The appellant Internal Revenue Service ("IRS")[1] argues that it should not be held liable for damages to a debtor-taxpayer under an Internal Revenue Code provision that allows a taxpayer to recover damages if the IRS "willfully violates" a bankruptcy court's discharge injunction under section 524 of the Bankruptcy Code. The IRS challenges the bankruptcy court's definition of "willfully" and the

---

[1] In the adversary proceeding from which the IRS appeals, the debtor named the Internal Revenue Service as the defendant. See Compl., Murphy v. I.R.S., Ch. 7 Case No. 05-22363, Adv. No. 11-2020 (Feb. 28, 2011) (Bankr. ECF No. 1). Where the debtor asserts that the IRS committed a willful violation of a discharge injunction, the debtor "may petition the bankruptcy court to recover damages against the United States." 26 U.S.C.A. § 7433(e)(1) (2015). As the appellant points out, the IRS does not have capacity for suit; the United States is the real party in interest. See, e.g., Reppert v. I.R.S., 418 F. App'x 897, 898 n.1 (11th Cir. 2011). Like the appellant's brief, however, for simplicity this Order refers to the appellant as "the IRS."

bankruptcy court's decision to use offensive collateral estoppel to establish the IRS violation. The IRS argues that the predicate judgment against the IRS confirming that the bankruptcy discharge wiped out the tax debts (thus generating the estoppel) resulted from an Assistant United States Attorney's (AUSA) then unknown cognitive impairment.

After oral argument on August 22, 2016, I conclude that the bankruptcy court applied the proper definition of "willfully," but that it acted contrary to law and abused its discretion in failing to consider the IRS's two motions for reconsideration under the interests-of-justice test that Federal Rule of Civil Procedure 54(b) requires.[2]

## FACTS AND PROCEDURAL BACKGROUND

The debtor-taxpayer William C. Murphy ("Murphy") filed for Chapter 7 bankruptcy protection in October 2005. Voluntary Pet., In re Murphy, Ch. 7 Case No. 05-22363 (Oct. 13, 2005) (Bankr. ECF No. 1). The majority of the debts Murphy listed on his Petition were for outstanding federal income taxes for various years. Id. at 11–14. The bankruptcy court granted his discharge on February 14, 2006. Order Discharging Debtor, In re Murphy, Ch. 7 Case No. 05-22363 (Feb. 14, 2006) (Bankr. ECF No. 5).

Thereafter, the IRS informed Murphy that it considered his tax liabilities excepted from the 2006 discharge on the basis that Murphy had filed fraudulent returns or attempted to evade taxes. See 11 U.S.C.A. § 523(a)(1)(C). The IRS

---

[2] Federal Rule of Bankruptcy Procedure 7054(a) incorporates Federal Rule of Civil Procedure 54(a) through (c). Throughout this Order I refer to the Federal Rules of Civil Procedure (as incorporated by the corresponding Bankruptcy Rules) unless the Bankruptcy Rule is substantively different than the Civil Rule. I note the corresponding Bankruptcy Rule in footnotes.

issued notices of levies to Murphy's bank and various clients.[3]  See Debtor's Statement of Material Facts at 2-3, Murphy v. I.R.S., Adv. No. 09-2042 (May 4, 2010) (Bankr. ECF No. 41-1); Obj. and Resp. by IRS at 9-10, Murphy v. I.R.S., Adv. No. 09-2042 (May 25, 2010) (Bankr. ECF No. 44).

In August 2009, Murphy reopened his bankruptcy case and began the first adversary proceeding in bankruptcy court seeking a declaration that his 2006 discharge covered taxes owing for 1993–1998, 2000, and 2001; challenging the IRS's attempts to collect taxes for the years covered by his bankruptcy discharge; and asking that the IRS be enjoined from all collection activities concerning the discharged tax liabilities.  Compl., Murphy v. I.R.S., Adv. No. 09-2042 (Aug. 14, 2009) (Bankr. ECF No. 1).   Because the AUSA who handled bankruptcy proceedings in this District accepted service of the Complaint, Murphy's counsel did not mail a copy of the Complaint to the Attorney General, as Federal Rule of Bankruptcy Procedure 7004(b)(5) would otherwise require.  Therefore, the Tax Division of the Department of Justice and the Boston IRS Office of Chief Counsel were unaware of the adversary proceeding until long after an adverse judgment.[4] U.S. Renewed Mot. to Recons. Order Granting Partial Summ. J. at 8-9, Murphy v. I.R.S., Adv. No. 11-2020 (Nov. 16, 2015) (Bankr. ECF No. 265).

In this first adversary proceeding, Murphy bore the burden of proving that a bankruptcy discharge issued, but the IRS bore the burden of proving that

---

[3] For a more detailed synopsis of the circumstances related to these earlier bankruptcy proceedings, see my earlier opinion on the IRS's appeal in the first adversary proceeding.  I.R.S. v. Murphy, No. 2:14-cv-340-DBH, --- B.R. ---, 2015 WL 790075 (D. Me. Feb. 24, 2015).
[4] The IRS does not dispute the validity of the AUSA's waiver of service of process, but argues that the fact that the Complaint was not served in accordance with Bankruptcy Rule 7004(b)(5) bears on whether it was appropriate for the bankruptcy court to apply offensive collateral estoppel on the issue of liability.  See Brief of Appellant at 53-54 (ECF No. 9) ("IRS Br.").

Murphy's tax obligations were excepted from the 2006 discharge under Bankruptcy Code section 523 and therefore that the 2006 discharge did not prevent IRS collection efforts.  <u>See</u> Pretrial Order at 6, <u>Murphy v. I.R.S.</u>, Adv. No. 09-2042 (Oct. 20, 2009) (Bankr. ECF No. 19).

Murphy moved for summary judgment in this adversary proceeding on May 4, 2010, seeking a final determination that his 2006 discharge embraced his tax debts.  Pl.'s Mot. for Summ. J. at 5, <u>Murphy v. I.R.S.</u>, Adv. No. 09-2042 (May 4, 2010) (Bankr. ECF No. 41).  The AUSA who had been handling bankruptcy proceedings in this District on behalf of the government for many years took only limited discovery to support the IRS's position; he served requests for production of documents but did not take Murphy's deposition.  <u>See</u> Notice of Service of Disc., <u>Murphy v. I.R.S.</u>, Adv. No. 09-2042 (Dec. 3, 2009) (Bankr. ECF No. 26).  In opposing the motion on May 25, 2010, the AUSA failed to present evidence that would raise a triable issue of fact as to whether Murphy's tax liabilities were excepted—an opposition that presiding Bankruptcy Judge Haines described as falling "far short of applicable substantive and procedural standards" under Federal Rule of Civil Procedure 56.[5]  Order Granting Summ. J. at 5, <u>Murphy v. I.R.S.</u>, Adv. No. 11-2020 (Dec. 20, 2013) (Bankr. ECF No. 94). In June 2010, Judge Haines granted Murphy's motion for summary judgment from the bench, stating:

> I've looked at the summary judgment record very carefully and frankly, somewhat surprisingly, I'm not—I'm not of the

---

[5] Federal Rule of Civil Procedure 56 is incorporated by Federal Rule of Bankruptcy Procedure 7056.  This quoted portion is from the bankruptcy court's Order on the parties' cross motions for summary judgment in the second adversary proceeding (to establish liability for violating the discharge injunction), but Judge Haines was describing the IRS's opposition to Murphy's motion for summary judgment in the first adversary proceeding in 2010.

> view that the IRS has put forth qualified, evidentiary-quality,
> by affidavit or otherwise, materials that create disputed
> issues of material fact.  And therefore I'm going to enter
> summary judgment for the plaintiff.

Tr. of Bench Ruling at 4-5, <u>Murphy v. I.R.S.</u>, Adv. No. 09-2042 (June 22, 2010)[6]

(Bankr. ECF No. 99).

In his ensuing order, Judge Haines declared Murphy's tax obligations for the years 1993-1998, 2000, and 2001 discharged by the 2006 bankruptcy discharge.  Order Granting Mot. for Summ. J., <u>Murphy v. I.R.S.</u>, Adv. No. 09-2042 (June 22, 2010) (Bankr. ECF No. 48).  The IRS did not appeal.

In February 2011, Murphy filed a second adversary Complaint against the IRS under Internal Revenue Code section 7433(e), which permits a taxpayer to recover damages if the IRS "willfully violates" a bankruptcy discharge under section 524 of the Bankruptcy Code.[7]  Compl., <u>Murphy v. I.R.S.</u>, Adv. No. 11-2020 (Feb. 28, 2011) (Bankr. ECF No. 1); <u>see</u> 26 U.S.C.A. § 7433(e).  Murphy alleged that the IRS was liable under section 7433(e) of the Internal Revenue Code because the IRS had violated Bankruptcy Code section 524 by levying on his discharged tax liabilities.  Compl., <u>Murphy v. I.R.S.</u>, Adv. No. 11-2020 (Feb. 28, 2011) (Bankr. ECF No. 1).  The period for discovery in the second adversary proceeding expired without the AUSA taking any discovery.  U.S.

---

[6] Entered on the bankruptcy docket in the 09-2042 adversary proceeding on September 6, 2016, at the request of this court.  This court also requested that the parties provide a transcript of the argument on Murphy's motion, which was held before Judge Haines on June 1, 2010.

[7] Murphy first pursued an administrative claim for damages pursuant to 26 C.F.R. § 301.7433-1(e), and was unsuccessful at the administrative level.  <u>See</u> Stipulation to an Order Staying Adversary Proceeding, <u>Murphy v. I.R.S.</u>, Adv. No. 11-2020 (Apr. 22, 2011) (Bankr. ECF No. 7); Order Staying Adversary Proceeding, <u>Murphy v. I.R.S.</u>, Adv. No. 11-2020 (Apr. 25, 2011) (Bankr. ECF No. 8).

Request for a Status or Pretrial Conference in Chambers at 1, 3, Murphy v. I.R.S., Adv. No. 11-2020 (Dec. 11, 2012) (Bankr. ECF No. 52).

In 2012, the AUSA who had been handling this and other bankruptcy matters in this District stated his intention to retire by year's end. See id. at 1. Around the same time, colleagues of the AUSA stated concerns about his physical demeanor and possible health problems. See R. Murphy Decl. at 2, Murphy v. I.R.S., Adv. No. 11-2020 (Feb. 28, 2014) (Bankr. ECF No. 142-1) (sealed document). In October 2012, the United States Attorney's Office disclosed to the Department of Justice's Tax Division that the AUSA had been potentially diagnosed with amyotrophic lateral sclerosis (ALS) and dementia. Id. at 6. Thereafter, the Tax Division informed the bankruptcy court that the AUSA was no longer assigned to Murphy's case due "to his imminent retirement and for personal reasons" and that the Tax Division would take over the defense of the second adversary proceeding. U.S. Request for a Status or Pretrial Conference in Chambers at 1, Murphy v. I.R.S., Adv. No. 11-2020 (Dec. 11, 2012) (Bankr. ECF No. 52). In this same filing, Tax Division counsel said that the IRS planned to file a motion to reopen discovery on damages in the second adversary proceeding based on excusable neglect under Bankruptcy Rule 9006 and/or good cause under Federal Rule of Civil Procedure 16(b)(4). Id. at 3.

At that time, the parties agreed that the IRS would defer moving to reopen discovery pending cross motions for summary judgment on liability. See Parties' Am. Joint Pretrial Order at 5-6, Murphy v. I.R.S., Adv. No. 11-2020 (Mar. 27, 2013) (Bankr. ECF No. 63). The principal argument that the IRS made in its motion for summary judgment was that the IRS should be able to escape liability

under section 7433(e) for "willfully violat[ing]" the discharge injunction because it relied on a good faith belief that the statutory discharge injunction was inapplicable to the tax debts at issue.  Br. in Support of Mot. for Summ. J. at 1-19, Murphy v. I.R.S., Adv. No. 11-2020 (May 1, 2013) (Bankr. ECF No. 69). Murphy argued, in turn, that the IRS "willfully violate[d]" the discharge injunction under section 7433(e) because the tax debt was discharged, the IRS had notice of the discharge, and the IRS intended the acts that violated the discharge injunction.  Murphy Opp'n to Summ. J. & Cross-Motion for Summ. J. at 4-8, Murphy v. I.R.S., Adv. No. 11-2020 (June 28, 2013) (Bankr. ECF No. 80).

On December 20, 2013, Bankruptcy Judge Haines granted partial summary judgment on liability to taxpayer Murphy in the second adversary proceeding.  Order Granting Summ. J., Murphy v. I.R.S., Adv. No. 11-2020 (Dec. 20, 2013) (Bankr. ECF Nos. 94–95).  Using the doctrine of offensive collateral estoppel, Judge Haines ruled that the preclusive effect of the June 2010 summary judgment order in the first adversary proceeding (determining that Murphy's tax debt was discharged) estopped the IRS from asserting that Murphy's tax debt was excepted from discharge for the purpose of escaping liability under 26 U.S.C.A. § 7433(e).  Id.  As a result, liability (not damages) was established.  Id.  At the time Judge Haines issued his ruling, he knew of the by-then-retired AUSA's impairment (it was brought to his attention in a 2013 status conference), but nothing in the record suggested that the AUSA's impairment had affected his competency during the first adversary proceeding in 2010. Although the IRS sought an interlocutory appeal from the partial summary judgment, I denied the request, Murphy v. I.R.S., No. 2:14-mc-24-DBH, --- B.R.

---, 2014 WL 840255 (D. Me. Mar. 4, 2014), ruling that the appeal should await final judgment after a determination of damages.

Thereafter, the IRS acquired the AUSA's medical records and learned that he had in fact been diagnosed with frontotemporal dementia in late 2011, coupled with ALS, and that three physicians all agreed that the AUSA's condition predated the May 2010 summary judgment proceedings in the first adversary proceeding. See U.S. Mot. to Revise Interlocutory Order Granting Partial Summ. J. on Issue of Liability at 6-10, Murphy v. I.R.S., Adv. No. 11-2020 (Apr. 11, 2014) (Bankr. ECF No. 155); Mem. in Support of Def.'s Mot. to Reopen Damages Disc. at 6-9, Murphy v. I.R.S., Adv. No. 11-2020 (Feb. 7, 2014) (Bankr. ECF No. 132) (sealed document); Exs. Medical R., Murphy v. I.R.S., Adv. No. 11-2020 (Apr. 1, 2014) (Bankr. ECF No. 152-2) (sealed documents). The IRS then filed three motions seeking relief.

In the first adversary proceeding, the IRS moved the bankruptcy court under Federal Rule of Civil Procedure 60(b)(6) and 60(b)(4)[8] to vacate its 2010 final discharge order. Def.'s Rule 60(b) Mot. for Relief from the Final Order of June 22, 2010, Murphy v. I.R.S., Adv. No. 09-2042 (May 1, 2014) (Bankr. ECF No. 52). Judge Haines having retired, Bankruptcy Judge Kornreich denied the motion in June 2014,[9] see Order on Def.'s Rule 60(b) Mot. for Relief from Final

---

[8] Bankruptcy Rule 9024 applies Rule 60 of the Federal Rules of Civil Procedure, subject to three exceptions that are inapplicable here.

[9] The bankruptcy court denied the motion without an evidentiary hearing. The bankruptcy court held that the 60(b)(6) motion was untimely, and that "the failures to act and omissions by counsel could have been ascertained at the time, if indeed there were such failures, if there had been appropriate review during the course of the handling of the matter." Tr. of Bench Ruling at 8, Murphy v. I.R.S., Adv. No. 09-2042 (June 25, 2014) (Bankr. ECF No. 80). The bankruptcy court construed the 60(b)(4) motion as based on the IRS's assertion of a lack of personal jurisdiction, which "would have been an error of law and should have been addressed in a timely appeal." Id.

Order, <u>Murphy v. I.R.S.</u>, Adv. No. 09-2042 (June 26, 2014) (Bankr. ECF No. 78). The IRS appealed to this court, and I affirmed the bankruptcy court's denial of Rule 60(b) relief on February 24, 2015.  <u>See</u> <u>I.R.S. v. Murphy</u>, No. 2:14-cv-340-DBH, --- B.R. ---, 2015 WL 790075 (D. Me. Feb. 24, 2015).[10]

The IRS also filed two motions in the second adversary proceeding: (1) the IRS moved to reopen discovery on damages based on its contention of excusable neglect and/or good cause because of the former AUSA's cognitive impairment during the second adversary proceeding, Def.'s Mot. to Reopen Damages Disc., <u>Murphy v. I.R.S.</u>, Adv. No. 11-2020 (Jan. 27, 2014) (Bankr. ECF No. 114); and (2) the IRS moved to reconsider or revise the interlocutory order granting summary judgment on the issue of liability, U.S. Mot. to Revise Interlocutory Order Granting Partial Summ. J. on Issue of Liability, <u>Murphy v. I.R.S.</u>, Adv. No. 11-2020 (Apr. 11, 2014) (Bankr. ECF No. 155).  Again, Judge Haines having retired, Judge Kornreich denied both motions from the bench on May 8, 2014.

---

at 9.  Because the "government took no appeal," the court found that the "motion under 60(b)(4) fails as well."  <u>Id</u>.  The bankruptcy court did not address the IRS's sovereign immunity or Tax Anti-Injunction Act arguments, but after full consideration, I found those arguments unpersuasive.  <u>See</u> <u>I.R.S. v. Murphy</u>, No. 2:14-cv-340-DBH, --- B.R. ---, 2015 WL 790075, at *12-16 (D. Me. Feb. 24, 2015).

[10] I concluded that it was too late to apply the "excusable neglect" standard because Rule 60(b)(1) limits that ground to one year after entry of the judgment, "a time limit far exceeded here," which was four years.  <u>I.R.S. v. Murphy</u>, No. 2:14-cv-340-DBH, --- B.R. ---, 2015 WL 790075, at *6 (D. Me. Feb. 24, 2015).  I also ruled that the bankruptcy court's 2010 summary judgment was not void under Federal Rule of Civil Procedure 60(b)(4) under any argument that the IRS pressed and that although "[t]he AUSA's medical condition is tragic, and any IRS loss that occurred on account of his impairment is unfortunate, [ ] the bankruptcy court did not abuse its discretion in concluding that under all of the circumstances the government failed to seek relief under Rule 60(b)(6) within a reasonable time."  <u>Id</u>. at *16.  In that appeal, the IRS also made a "fall-back request" for the court to announce that the summary judgment from the first adversary proceeding in June 2010 should "have no collateral estoppel or claim preclusion effect."  <u>Id</u>. at *11.  I concluded, however, that "[t]he appropriate avenue for relief from Bankruptcy Judge Haines's ruling that the first adversary proceeding summary judgment had the collateral estoppel effect of establishing liability in the second adversary proceeding is an appeal from final judgment after a damages determination in the second adversary proceeding."  <u>Id</u>.  That appeal is what is now before me.

Tr. of Bench Ruling at 8, 10, <u>Murphy v. I.R.S.</u>, Adv. No. 09-2042 (May 8, 2014) (Bankr. ECF No. 65)[11]; <u>see</u> Order on Def.'s Mot. to Revise Interlocutory Order, <u>Murphy v. I.R.S.</u>, Adv. No. 11-2020 (May 13, 2014) (Bankr. ECF No. 165); Order on Def.'s Mot. to Reopen Damages Disc., <u>Murphy v. I.R.S.</u>, Adv. No. 11-2020 (May 13, 2014) (Bankr. ECF No. 166).

With regard to the IRS's Rule 54(b)[12] motion to reconsider or revise Judge Haines's interlocutory order granting partial summary judgment on liability, Judge Kornreich stated that he was "uncertain as to the applicability of that rule," did not apply it, and instead applied Federal Rule of Civil Procedure 60(b)[13]—which is applicable only to final judgments.  Tr. of Bench Ruling at 9, <u>Murphy v. I.R.S.</u>, Adv. No. 09-2042 (May 8, 2014) (Bankr. ECF No. 65).   In applying Rule 60(b), Judge Kornreich denied the IRS's motion to reconsider, stating:

> My denial of the motion has two prongs.  First, that the disability was not the problem; that if there was a failure to adequately prosecute—that was attributable to a failure to supervise and as I have been told by the United States Attorney, supervision is not part of the game plan.[14]  Second, I have reviewed the written decision and have determined, according to my own likes, that there was no error of law which would permit me as a trial judge of this court to set aside or reconsider the decision of [Judge Haines].

---

[11] Although the motion was made in the second adversary proceeding, the transcript of the bankruptcy court's ruling was entered on the docket of the first adversary proceeding.  Tr. of Bench Ruling at 8, 10, <u>Murphy v. I.R.S.</u>, Adv. No. 09-2042 (May 8, 2014) (Bankr. ECF No. 65).

[12] Incorporated by Federal Rule of Bankruptcy Procedure 7054.

[13] Incorporated by Federal Rule of Bankruptcy Procedure 9024.

[14] At the hearing on the IRS's motion to reconsider, counsel for the IRS revealed that for this AUSA who handled bankruptcy cases in this District there was no procedure for review of his decisions or hierarchy of supervision in place to identify failings of counsel.  Tr. of Oral Argument on Apr. 7, 2014 at 28-30, <u>Murphy v. I.R.S.</u>, Adv. No. 11-2020 (May 23, 2014) (Bankr. ECF No. 169) (sealed document).  Moreover, because of the unique lawyer/client relationship when the Justice Department represents an agency like the IRS, the AUSA did not consult with the agency about litigation tactics or strategy, or send the IRS motions to review before filing.  <u>See id.</u> at 27-28.  Thus, there was no agency review and no internal review to monitor performance of counsel.

Id. at 9-10 (footnote added by this court).

Thereafter, the parties entered into and submitted to the bankruptcy court a stipulation as to damages, with certain rights reserved, whereby they stipulated to $225,000 in damages caused by the IRS's levies after the discharge. Settlement Agreement as to Damages (with Certain Rights Reserved), Murphy v. I.R.S., Adv. No. 11-2020 (Oct. 2, 2015) (Bankr. ECF No. 259-2).  The parties also agreed that the damages were contingent upon the IRS being able to file a renewed motion to reconsider in the bankruptcy court and to appeal any final judgment including the liability decision of December 20, 2013, and the denials of any motions to reconsider that determination.  Id. at 1-3, 5; see U.S. Renewed Mot. to Recons. Order Granting Partial Summ. J. on Issue of Liability, Murphy v. I.R.S., Adv. No. 11-2020 (Nov. 16, 2015) (Bankr. ECF No. 265).

On December 14, 2015, Judge Kornreich also having retired and the two successor bankruptcy judges in this District being recused, Bankruptcy Judge Hoffman of the District of Massachusetts denied the renewed motion to reconsider the liability decision, determining on the willfulness issue that "[i]t is settled law in the First Circuit that damages are available for violation of the discharge injunction if a creditor had knowledge of the discharge and intended the actions which constituted the violation."  Mem. & Order on Renewed Mot. of U.S. to Recons. at 3-4, Murphy v. I.R.S., Adv. No. 11-2020 (Dec. 14, 2015) (Bankr. ECF No. 266) (citing Pratt v. GMAC, 462 F.3d 14, 21 (1st Cir. 2006); Fleet Mortg. Grp., Inc. v. Kaneb, 196 F.3d 265, 268 (1st Cir. 1999)).  As to the IRS's objection to the use of offensive collateral estoppel to determine liability, Judge Hoffman stated: "Applying the IRS's motion to the flexible standards of

Fed. R. Bankr. P. 7054 [incorporating Federal Rule of Civil Procedure 54(b)], I find no basis to reconsider Judge Haines'[s] partial summary judgment ruling [on liability]." Id. at 5 (footnote omitted).[15]

In accordance with the settlement agreement, final judgment entered in favor of Murphy in the amount of $225,000 on December 23, 2015. Final Judgment, Murphy v. I.R.S., Adv. No. 11-2020 (Dec. 23, 2015) (Bankr. ECF No. 268). This timely appeal followed.

## JURISDICTION

The district court has jurisdiction over Murphy's Chapter 7 case under 28 U.S.C.A. § 1334. The bankruptcy court had jurisdiction by reference from this court under 28 U.S.C.A. § 157. See Local Rule 83.6. If the adversary proceeding seeking damages was a core bankruptcy proceeding (I conclude that it was, see infra), the reference was under section 157(b). If the adversary proceeding was a noncore bankruptcy proceeding, the reference was under section 157(c)(1). Because the IRS elected to have this appeal from the bankruptcy court heard by the District Court instead of the Bankruptcy Appellate Panel, this court now has jurisdiction under 28 U.S.C.A. § 158(a)(1), (c)(1)(A).

## STANDARD OF REVIEW

In core proceedings, conclusions of law reached by the bankruptcy court are subject to de novo review, and underlying factual findings are reviewed only for clear error. Monarch Life Ins. Co. v. Ropes & Gray, 65 F.3d 973, 978 (1st

---

[15] Judge Hoffman recognized the error of the previous denial, stating that he was applying Bankruptcy Rule 7054 (Fed. R. Civ. P. 54) rather than Bankruptcy Rule 9024 (Fed. R. Civ. P. 60). Mem. & Order on Renewed Mot. of U.S. to Recons. at 5 & n.6, Murphy v. I.R.S., Adv. No. 11-2020 (Dec. 14, 2015) (Bankr. ECF No. 266).

Cir. 1995).  Discretionary decisions are reviewed for abuse of discretion.  In re
Gonic Realty Tr., 909 F.2d 624, 626 (1st Cir. 1990).  In noncore proceedings the
bankruptcy judge's findings of fact, conclusions of law, and discretionary
decisions are reviewed de novo.  See 28 U.S.C.A. § 157(c)(1); In re Sheridan, 362
F.3d 96, 99-100 (1st Cir. 2004).

ANALYSIS

The IRS has raised two issues on appeal: (1) what kind of intent
determines whether an IRS employee "willfully violates" the bankruptcy
discharge injunction under section 7433(e); and (2) in refusing to reconsider or
revise its order determining that the IRS was liable under section 7433(e) based
upon offensive collateral estoppel, did the bankruptcy court improperly apply
Federal Rule of Civil Procedure 54(b) when presented with evidence of the AUSA's
previously unknown cognitive impairment.

## A. The Section 7433(e) Standard for When an Employee of the IRS "Willfully Violates" the Discharge Injunction

Internal Revenue Code section 7433(e)[16] provides:

> If, in connection with any collection of Federal tax with
> respect to a taxpayer, any officer or employee of the Internal
> Revenue Service willfully violates any provision of section
> 362 (relating to automatic stay) or 524 (relating to effect of
> discharge) of Title 11, United States Code (or any successor
> provision), or any regulation promulgated under such
> provision, such taxpayer may petition the bankruptcy court
> to recover damages against the United States.

The IRS Restructuring and Reform Act of 1998 added subsection (e) as part of a
significant bipartisan effort to address "abuses inflicted on taxpayers by
unsupportable activity within the IRS" after a series of investigative hearings

---

[16] The entire text of 26 U.S.C.A. § 7433 appears as Appendix 1 to this decision.

examining both the internal and public conduct of the agency.  144 CONG. REC. S4251-01 (daily ed. May 5, 1998); S. REP. NO. 105-174, at 7-9 (1998); Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. No. 105-206, 112 Stat. 685 (1998).  The Act added new "taxpayer protection and rights," including the ability to collect civil damages if an IRS employee "willfully violates" sections 362 or 524 of the *Bankruptcy Code*, Pub. L. No. 105-206, § 3102(c), and expanded taxpayers' rights to collect damages for an IRS employee's reckless, intentional, or negligent disregard of any provision of the *Internal Revenue Code*, id. § 3102(a).[17]  Although the legislative history of the entire Act is voluminous, it does not explain why Congress used "reckless, intentional, or negligent" in one subsection (7433(a) remedy for violations of the Internal Revenue Code), and used "willfully violates" in a different subsection (7433(e) remedy for violations of sections 362 and 524 of the Bankruptcy Code).  It is a general principle, however, that Congress "legislated against a background of law already in place and the historical development of that law."  Exxon Mobile Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 587 (2005).  I therefore address the interpretations of those terms at the time section 7433(e) was enacted.

"Willfulness" appears a number of times in the Internal Revenue Code and is an element of several tax crimes in Title 26.  See, e.g., 26 U.S.C.A. §§ 7201-07. In that context, the Supreme Court has defined the term as "requir[ing] the Government to prove that the law imposed a duty on the defendant, that the

---

[17] Before the IRS Restructuring and Reform Act of 1998, taxpayers could recover damages from the IRS only for an employee's reckless or intentional disregard of the Internal Revenue Code. See Pub. L. No. 105-206, § 3102(a), 112 Stat. 730.

defendant knew of this duty, *and that he voluntarily and intentionally violated that duty*." Cheek v. United States, 498 U.S. 192, 201 (1991) (emphasis added). As a result, a taxpayer defendant may raise as a defense that he held a good faith belief that he was not violating any provision of the tax laws. Id. at 202; see United States v. Aitken, 755 F.2d 188, 191-93 (1st Cir. 1985); cf. Ratzlaf v. United States, 510 U.S. 135, 137 (1994) ("To establish that a defendant 'willfully violat[ed]' the antistructuring law, the Government must prove that the defendant acted with knowledge that his conduct was unlawful.").

In contrast to these Internal Revenue Code provisions and interpretations, only one provision of the Bankruptcy Code contains the term "willful violation," and that is the provision prohibiting any violation of the section 362 automatic stay, 11 U.S.C.A. § 362(k)(1).[18] However, courts have used "willful violation" as the standard for assessing violations of the discharge injunction as well, relying on the statutory contempt powers in section 105.[19] See, e.g., Crysen/Montenay Energy Co. v. Esselen Assocs., Inc. (In re Crysen/Montenay Energy Co.), 902 F.2d 1098, 1105 (2d Cir. 1990); Cuffee v. Atl. Bus. & Cmty., Dev. Corp. (In re Atl. Bus. & Cmty. Corp.), 901 F.2d 325, 329 (3d Cir. 1990); Goichman v. Bloom (In re Bloom), 875 F.2d 224, 227 (9th Cir. 1989); David M. Holliday, Annotation,

---

[18] Section 524 of the Bankruptcy Code does contain the term "willful" in the context of a "willful failure of a creditor to credit payments received under a plan" as constituting a violation of the discharge injunction if the failure caused "material injury to the debtor." 11 U.S.C.A. § 524(i).
[19] Section 105(a) provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C.A. § 105(a).

*Willful Violation of Discharge Injunction Provisions of Bankruptcy Code § 524(a)(2) and (3)*, 9 A.L.R. Fed. 2d 431 (2016) (collecting cases). The term "willful violation" is not defined in the Bankruptcy Code. But courts have stated that a willful violation occurs if the defendant "(1) knew that the automatic stay was invoked and (2) intended the actions which violated the stay. This test is likewise applicable to determining willfulness for violations of the discharge injunction of § 524." <u>Hardy v. I.R.S. (In re Hardy)</u>, 97 F.3d 1384, 1390 (11th Cir. 1996) (citation omitted) (internal quotation marks omitted).

Against this backdrop, it is logical to conclude that when Congress adopted the undefined language "willfully violates" in the subsection of section 7433 that applies to IRS "violations of certain *bankruptcy* procedures," 26 U.S.C.A. § 7433(e) (emphasis added), it was using the meaning that the cases addressing bankruptcy violations previously had given it,[20] and not the meaning of "willfully" that courts use when taxpayers violate the Internal Revenue Code. Furthermore, in the same subsection of 7433, Congress recognized that individual debtors can recover damages for "any willful violation" by the IRS of a section 362 stay. <u>Id</u>. § 7433(e)(2)(B). As I have said, that term was already defined by the caselaw. It is unlikely that Congress intended subsection (e) of section 7433 to encompass two separate definitions of "willful" violations in the same sentence. Thus, I am unpersuaded by the IRS's argument that section 362 (the automatic stay provision) and section 524 (the discharge injunction

---

[20] One bankruptcy court has stated that Congress adopted this provision "as a result of repeated violations of the discharge injunction by the IRS," <u>In re Johnston</u>, No. 2:01-BK-06221-SSC, 2010 WL 1254882, at *4 n.13 (Bankr. D. Ariz. Mar. 22, 2010), <u>rev'd on other grounds,</u> No. 2:01-BK-06221-SSC, 2014 WL 5797644 (D. Ariz. Sept. 25, 2014), but it cites no authority for the statement.

provision) should be treated differently.   Section 7433(e) applies the same "willfulness" terminology to violations of both sections.

The First Circuit has articulated the standard for willfulness in the context of violating the automatic stay as follows:

> A good faith belief in a right to the property is not relevant to a determination of whether the violation was willful.  A willful violation does not require a specific intent to violate the automatic stay.  *The standard for a willful violation of the automatic stay under § 362(h) is met if there is knowledge of the stay and the defendant intended the actions which constituted the violation.*

Kaneb, 196 F.3d at 268-69 (emphasis added) (citations omitted).   The First Circuit has said that the same standard applies for willful violations of the section 524 discharge injunction.   See In re Pratt, 462 F.3d at 21; see also 4 Collier on Bankruptcy § 524.02(2)(c) ("A creditor's actions in violation of the discharge injunction are willful if the creditor knows the discharge has been entered and intends the actions that violate the discharge injunction.").   I conclude that the same standard applies to section 7433(e).

I also note that the IRS's interpretation of the term "willfully violates" in this lawsuit is undermined by the IRS's own internal manual.   After providing an overview regarding the IRS authority to pay damages and attorney's fees for violations of the automatic stay and discharge injunction, the Internal Revenue Manual explicitly states:

> (4) ***Willfulness.***   The Service can only be held liable for damages and attorney's fees if it commits a "willful violation" of the stay or discharge injunction.   "Willful" in this context means an act that was committed intentionally or knowingly.   A willful violation occurs when the Service has received notice of a voluntary bankruptcy filing or of the court's granting of a discharge, and the Service does not respond timely to stop its collection activities.

> (5) **_Identifying Willfulness._**   To determine if a willful violation has occurred, [the IRS] must verify the Service received notice of the bankruptcy or discharge order and:
> • Subsequently engaged in collection activities, or
> • Failed to halt its collection activities.

Internal Revenue Manual § 1.4.51.2.7.1 (Payment of Damages) (Aug. 11, 2015). Although the Manual is not binding authority,[21] its definition of willfulness is consistent with the standard I apply here.

The IRS argues that sovereign immunity requires a different, more demanding standard for determining liability under section 7433(e). See IRS Br. at 42-46. But it is clear that the government has waived sovereign immunity by virtue of section 7433(e), and the statutory language is straightforward. There is no ambiguity that would require sovereign immunity principles to tip the scales the other way. As a result, upon de novo review I conclude that the bankruptcy court was correct in ruling that section 7433(e) willfulness is satisfied if the taxes at issue were discharged, the IRS knew of the bankruptcy discharge, and the IRS thereafter engaged in collection efforts, regardless of good faith. Here, the IRS knew of the bankruptcy court discharge and sought to collect tax debts nevertheless. It is therefore liable under section 7433(e) unless the tax debts were in fact not discharged.

That brings me to the bankruptcy court's decision refusing to reconsider its interlocutory ruling that offensive collateral estoppel prevented the IRS from

---

[21] See Griswold v. United States, 59 F.3d 1571, 1576 n.8 (11th Cir. 1995) ("While the IRS Manual does not have the force of law, the manual provisions do constitute persuasive authority as to the IRS's interpretation of the statute and the regulations." (citing Anderson v. United States, 44 F.3d 795, 799 (9th Cir.1995))); see also United States v. Michaud, 860 F.2d 495, 498-500 (1st Cir. 1988); United States v. Hopkins, 509 F. App'x 765, 774 (10th Cir. 2013); In re Krause, 386 B.R. 785, 841 (Bankr. D. Kan. 2008), aff'd, No. 08-1132, 2009 WL 5064348 (D. Kan. Dec. 16, 2009), aff'd, 637 F.3d 1160 (10th Cir. 2011); Yalkut v. Gemignani, 873 F.2d 31, 35 (2d Cir. 1989).

contesting whether the taxes were discharged for purposes of the second adversary proceeding seeking damages under section 7433(e).  The bankruptcy court denied the IRS's Rule 54(b) motion twice.  That is the subject of the second issue in this appeal.

### B.    *Application of Collateral Estoppel & Judge Haines's Interlocutory Liability Ruling*

The IRS accepts that it is foreclosed from ever collecting Murphy's tax debts.[22]  But it requests that I vacate the judgment, and vacate and remand the bankruptcy court's Rule 54(b) rulings so that it can attempt to prove that a discharge exception applies to Murphy's taxes for the purpose "of refuting [an IRS] willful violation [and resulting damages], even though *res judicata* bars collecting the taxes."  IRS Br. at 47-63.  Murphy, in turn, argues that the bankruptcy court did not abuse its discretion in estopping the IRS from relitigating whether his taxes were discharged because it is not the job of the court to "bail out the United States when its Assistants [are] not being adequately supervised or their cases [are] not being monitored."  Murphy Br. at 48.

#### 1.   *Rule 54(b)—Review of an Interlocutory Ruling*

##### a.  *Core or Noncore Proceeding*

First, I address the core versus noncore nature of this adversary proceeding.  The IRS argues that my review is de novo because the damages remedy created by 26 U.S.C.A. § 7433(e) "arises under" Title 26—not Title 11—and it is therefore a noncore bankruptcy proceeding.  IRS Br. at 49.  Murphy

---

[22] I affirmed the denial of Rule 60(b) relief from a final judgment in the first adversary proceeding. See I.R.S. v. Murphy, No. 2:14-cv-340-DBH, --- B.R. ---, 2015 WL 790075, at *16 (D. Me. Feb. 24, 2015).

argues that because the bankruptcy court has exclusive jurisdiction over such claims under section 7433(e) this is a core proceeding, and therefore my review is limited to whether the bankruptcy court abused its discretion—the standard of review for appeals from denials of motions to reconsider.  Murphy Br. at 46.

I conclude that this is a core proceeding.  Section 157 of Title 28 sets forth a nonexhaustive list of "core proceedings" that includes matters such as "determinations as to the dischargeability of particular debts," 28 U.S.C.A. § 157(b)(2)(I), and allowance or disallowance of claims against the estate," id. § 157(b)(2)(B), as well as a broadly-phrased catchall covering "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship," id. § 157(b)(2)(O).  Contrary to the IRS's argument, a damages action pursuant to section 7433(e) is not a noncore proceeding because it appears in Title 26 instead of Title 11.  Rather, the First Circuit has indicated that core proceedings are those that are "inextricably bound" to a right created by the Bankruptcy Code.  In re Sheridan, 362 F.3d at 108–09 (internal quotation marks omitted).   Put another way, "'controversies that do not depend on the bankruptcy laws for their existence— suits that could proceed in another court even in the absence of bankruptcy— are not core proceedings.'"  Id. (quoting Jackson v. Wessel (In re Jackson), 90 B.R. 126, 129 (Bankr. E.D. Pa. 1988), aff'd, 118 B.R. 243 (E.D. Pa. 1990)).  Section 7433(e) does not fit that paradigm.

Section 7433(e) was explicitly added to remedy actions for violations of "*certain bankruptcy procedures*" and states that it is to be the "*exclusive remedy*" for automatic stay violations (section 362) and discharge violations (section 524).

26 U.S.C.A. § 7433(e), (e)(2) (emphasis added).  Subsection (e) is dependent upon and would not exist without the bankruptcy laws, see In re Sheridan, 362 F.3d at 108-09, and is thus "inextricably bound" by those rights—the automatic stay and the discharge injunction—created by the Bankruptcy Code.  Moreover, the nonexhaustive list of core proceedings found in section 157(b)(2) includes proceedings that determine the dischargeability of particular debts.  The fact that the IRS's argument on dischargeability is part of a damages claim pursuant to section 7433 of the Internal Revenue Code does not make this matter noncore. In a core proceeding, I review the bankruptcy court's "judgment under traditional appellate standards," Exec. Benefits Ins. Agency v. Arkison, 134 S. Ct. 2165, 2171–72 (2014), namely I "assay the bankruptcy court's conclusions of law de novo, its factual findings for clear error, and its [discretionary rulings] for abuse of discretion."  In re Puffer, 674 F.3d 78, 81 (1st Cir. 2012) (citations omitted).

### b.  The Bankruptcy Court's Denial of the Rule 54(b)[23] Motions

Here is the record before me concerning the bankruptcy court rulings.  In June 2010, Judge Haines granted summary judgment to Murphy that the tax debt at issue was discharged because the IRS "surprisingly" presented no

---

[23] Incorporated by Federal Rule of Bankruptcy Procedure 7054(a).   Federal Rule of Civil Procedure 54(b) states:

> **(b) Judgment on Multiple Claims or Involving Multiple Parties.**   When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.  Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and *may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.*

(Emphasis added.)

evidence to the contrary.  Then in December 2013, relying on that 2010 ruling, Judge Haines used offensive collateral estoppel to grant partial summary judgment to Murphy on the issue of the IRS's liability for damages under section 7433(e).  In December 2013, Judge Haines had learned of the by-then-retired AUSA's impairment, but there was no available medical evidence to suggest that the impairment existed during the first summary judgment proceeding in 2010 (the first adversary proceeding).  In April 2014, after procuring the AUSA's medical records that included opinions from the AUSA's doctors that the impairment predated the 2010 summary judgment, the IRS moved under Rule 54(b) to reconsider or revise Judge Haines's interlocutory order granting summary judgment on liability (in the second adversary proceeding), arguing that the newly discovered evidence and the unique factual circumstances of this case presented the type of situation where the bankruptcy court should exercise its discretion to reconsider its interlocutory decision and decline to apply offensive collateral estoppel.  That 54(b) motion to reconsider came before Judge Kornreich for hearing in May 2014 because Judge Haines had retired.  Judge Kornreich said that he was "uncertain as to the applicability of that rule [54(b)]." He did not apply the standard of Rule 54(b) (interests of justice) for an interlocutory ruling and instead applied the more stringent standard of Rule

60(b)[24] for vacating final judgments, and denied the IRS's motion to reconsider.[25] In October 2015, the parties reached a stipulation as to damages and agreed that the IRS could file a renewed motion to reconsider Judge Haines's December 20, 2013, partial summary judgment on liability.

The IRS moved again in November 2015 under Rule 54(b)—not Rule 60(b)—for the bankruptcy court to reconsider and revise Judge Haines's interlocutory liability determination from December 20, 2013. The IRS pointed out that, unlike Rule 60(b), a motion for reconsideration under Rule 54(b) "must be tested under the 'interests of justice' standard." U.S. Renewed Mot. to Recons. Order Granting Partial Summ. J. on Issue of Liability at 21, Murphy v. I.R.S., Adv. No. 11-2020 (Nov. 16, 2015) (Bankr. ECF No. 265) (internal quotation marks omitted) (citing Greene v. Union Mut. Life Ins. Co. of Am., 764 F.2d 19, 22-23 (1st Cir. 1985)). By then, Judge Kornreich had also retired. Bankruptcy Judge

---

[24] Incorporated by Federal Rule of Bankruptcy Procedure 9024. Judger Kornreich said that he was giving the IRS the "benefit of the doubt" in applying Rule 60(b), but in fact Rule 60(b) is far more demanding than Rule 54(b). Tr. of Bench Ruling at 9, Murphy v. I.R.S., Adv. No. 09-2042 (May 8, 2014) (Bankr. ECF No. 65); see Fed. R. Civ. P. 60(b) advisory committee's note to 1946 amendment ("[H]ence, interlocutory judgments are not brought within the restrictions of the rule, but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires."); see also Fed. Deposit Ins. Corp. v. Francisco Inv. Corp., 873 F.2d 474, 478 (1st Cir. 1989) ("If we were to apply the 60(b) standard to non-final default judgments we would have the anomaly of using the strict standard envisioned for final judgments to non-final default judgments and the more liberal standard of Rule 54(b) to other non-final judgments.").

[25] Judge Kornreich did not really address the newly discovered evidence of the AUSA's impairment other than to say that "[t]hose newly discovered facts have nothing to do with the merits of the case. . . .   [T]he disability was not the problem; that if there was a failure to adequately prosecute—that was attributable to a failure to supervise and as I have been told by the United States Attorney, supervision is not part of the game plan." Tr. of Bench Ruling at 9, Murphy v. I.R.S., Adv. No. 09-2042 (May 8, 2014) (Bankr. ECF No. 65). I certainly appreciate the bankruptcy court's concern that lawyers appearing before it have adequate supervision, and that was one of the factors that played a role in my affirming the denial of Rule 60(b) relief to the final judgment in the first adversary proceeding. But that is only one factor out of many to consider in deciding under the interests of justice whether an interlocutory order should be vacated or revised under Rule 54(b). See infra note 29.

Hoffman, who was assigned from the District of Massachusetts, ruled on the IRS's renewed motion for reconsideration.[26]  Judge Hoffman devoted a single paragraph [27] to the IRS's argument that offensive collateral estoppel was inequitable under the circumstances of the AUSA's cognitive impairment.  In it, he summarily repeated Judge Kornreich's reasoning for denying the first motion for reconsideration before stating: "Applying the IRS's motion to the flexible standards of Fed. R. Bankr. P. 7054 [which incorporates Rule 54(b)], I find no basis to reconsider Judge Haines'[s] partial summary judgment ruling."  Mem. & Order on Renewed Mot. of U.S. to Recons. at 5, Murphy v. I.R.S., Adv. No. 11-2020 (Dec. 14, 2015) (Bankr. ECF No. 266) (footnote omitted).  Judge Hoffman denied the IRS's renewed motion for reconsideration, entered final judgment in favor of Murphy on December 23, 2015—based upon the summary judgment of liability and the stipulated damages—and the IRS appealed to this court.

Rulings on motions to reconsider in a core proceeding are reviewed for an abuse of discretion.  In re Popa, 214 B.R. 416, 419-20 (B.A.P. 1st Cir. 1997), aff'd, 140 F.3d 317 (1st Cir. 1998).  "A [ ] court abuses its discretion when 'a relevant factor deserving of significant weight is overlooked, or when an improper factor is accorded significant weight, or when the court considers the appropriate mix of factors, but commits a palpable error of judgment in calibrating the decisional scales.'"  United States v. Siciliano, 578 F.3d 61, 72 (1st Cir. 2009) (quoting United States v. Roberts, 978 F.2d 17, 21 (1st Cir. 1992)).

---

[26] As the Settlement Agreement contemplated, he did so without inviting Murphy to respond. See Order, Murphy v. I.R.S., Adv. No. 11-2020 (Oct. 9, 2015) (Bankr. ECF No. 260); Settlement Agreement as to Damages (with Certain Rights Reserved) at 5, Murphy v. I.R.S., Adv. No. 11-2020 (Oct. 2, 2015) (Bankr. ECF No. 259-2).
[27] I reproduce the entire paragraph in Appendix 2.

Unlike the more stringent standards for a Rule 60(b) motion to vacate a final judgment, "a [ ] court faced with a motion to reconsider [a nonfinal ruling] *must apply* an interests-of-justice test."   Roberts, 978 F.2d at 21 (emphasis added); see Douglas v. York Cty., 360 F.3d 286, 290 (1st Cir. 2004).   Because "[j]ustice is an ideal that defies precise definition," the First Circuit has said that there is no single list of factors that will apply in every case, but has provided "certain rules of thumb."   Roberts, 978 F.2d at 21-22.   Those rules of thumb include (1) the nature of the case (in Roberts, "a criminal case involving serious accusations," which argued in favor of vacating the previous order);  (2) where the ruling resulted from a dilatory filing,  the degree of tardiness; (3) the reasons underlying that tardiness; (4) the degree of culpability for the lawyer's failure (deliberate, accidental, grossly negligent, or merely careless); (5) what prejudice the failure caused to the other party; (6) the institutional interests of the court in enforcement of its procedural rules and the burden on judicial resources; and (7) the likelihood of success for the party seeking to revisit the interlocutory ruling.  Id. at 21-23.  Courts are not required to look at each factor in every case and are not precluded from examining other factors depending on the relevant circumstances.  Id. at 22; see Siciliano, 578 F.3d at 72-73; Douglas, 360 F.3d at 290; Golf Tech, LLC v. Edens Techs., LLC, 610 F. Supp. 2d 106, 109 (D. Me. 2009).  However, the court must apply the correct test.

The bankruptcy court's ruling on the IRS's first motion to reconsider was contrary to law and an abuse of discretion because the bankruptcy judge applied the more stringent standards of Rule 60(b) for relief from final judgment, see Fed.

Deposit Ins. Corp. v. Francisco Inv. Corp., 873 F.2d 474, 478 (1st Cir. 1989),

rather than the interests-of-justice test for an interlocutory ruling.[28]

    The 2015 denial of the IRS's renewed motion for reconsideration explicitly

cited Rule 54(b), but nowhere did it state the proper test—the interests-of-justice

test.  Essentially it recapitulated Judge Kornreich's erroneous Rule 60(b) ruling:

> Judge Kornreich denied the previous motion for
> reconsideration on the basis that the United States Attorney
> should have supervised his AUSA.  The government admitted
> at oral argument before Judge Kornreich that if the AUSA
> had merely been negligent, sloppy or inattentive, it would
> not be seeking relief. Judge Kornreich soundly reasoned that the
> late-discovered mental disability of the AUSA did not justify
> reconsideration any more than the AUSA's negligence or
> professional incompetence would have.

Mem. & Order on Renewed Mot. of U.S. to Recons. at 5, Murphy v. I.R.S., Adv.

No. 11-2020 (Dec. 14, 2015) (Bankr. ECF No. 266) (footnote omitted).  At best,

this explanation mentions a single Rule 54(b) factor—the institutional interests

of the court.  I conclude that the Rule 54(b) interests-of-justice test was never

applied to either IRS motion to reconsider, which renders Judge Hoffman's order

denying the IRS's renewed motion for reconsideration an abuse of discretion and

contrary to law.  See Roberts, 978 F.2d at 21.

    The ruling under Rule 54(b) should not be based solely on the bankruptcy

court's understandable dissatisfaction with how AUSAs in bankruptcy court are

supervised.[29]   That may be important in an excusable neglect analysis, and

---

[28] Because damages had not yet been determined under section 7433(e), Judge Haines's
December 2013 order granting partial summary judgment to Murphy was interlocutory.

[29] As I stated previously in my decision on the IRS's Rule 60(b) appeal, "[e]ven if supervisors
could not have identified the AUSA's disability in 2010, review certainly could have identified the
asserted gross failing in the summary judgment response and the preceding discovery."  I.R.S.
v. Murphy, No. 2:14-cv-340-DBH, --- B.R. ---, 2015 WL 790075 (D. Me. Feb. 24, 2015); see United
States v. Golden Elevator, Inc., 27 F.3d 301, 304 (7th Cir. 1994) ("Supervision of Assistant United
States Attorneys is a job for the Executive Branch, not for the Judicial Branch, and, if internal

indeed the IRS has already paid a price for that lack of supervision in the final judgment discharging the tax debts.  But the Rule 54(b) analysis is different.  An assessment of the "interests of justice" should consider the nature of the case (a taxpayer seeking damages from the government which would be in addition to his successful discharge of his tax debts); the nature of the default (here, not a late filing, but a failure to produce evidence in opposition to the taxpayer's motion for summary judgment); the reasons for the default (here, evidence that the AUSA was cognitively impaired at the time that he performed inadequately); the degree of culpability (perhaps none by the AUSA if he was cognitively impaired in a way that prevented him from appreciating his condition; some by the U.S. Attorney's Office or the IRS for lack of quality control or supervision); the prejudice to the taxpayer (here, no prejudice so far as dischargeability of the tax debts is concerned because that judgment is final; but if the IRS is allowed to challenge the merits of the damages action and succeeds in showing that the

---

controls fail, the Executive Branch must accept the consequences."). But a lack of supervision is not a *per se* reason to deny relief. For example, the First Circuit has previously ruled that the illness of a solo practitioner justified vacating a default six months after its entry and only a few weeks before the beginning of a trial under Federal Rule of Civil Procedure 55(c) (permitting a court to set aside the entry of a default "[f]or good cause shown"). <u>Leshore v. Cty. of Worcester</u>, 945 F.2d 471, 472-73 (1st Cir. 1991). Similarly, the Ninth Circuit has held that the "illness of counsel can amount to an extraordinary circumstance under [Federal Rules of Appellate Procedure] 4(a)(5)" (permitting the district court to extend the time for filing an appeal on a showing by the moving party that the failure to file a timely appeal was the result of "excusable neglect"), even when the attorney was only one of many attorneys responsible for the administration of the case. <u>Islamic Republic of Iran v. Boeing Co.</u>, 739 F.2d 464, 465 (9th Cir. 1984). In another Ninth Circuit case involving Rule 60(b)(1) (permitting motions for relief from a final judgment based on excusable neglect if such motions are made "not more than one year after the judgment"), the court vacated the district court's order denying the motion for Rule 60(b) relief when a lawyer failed to sufficiently oppose summary judgment as the result of a serious mental impairment. <u>Gravatt v. Paul Revere Life Ins. Co.</u>, 101 F. App'x 194, 196-97 (9th Cir. 2004); <u>see also</u> <u>United States v. Cirami</u>, 563 F.2d 26, 32-36 (2d Cir. 1977) (vacating the district court's denial of a motion for relief from judgment under Rule 60(b)(6) (permitting relief from final judgments for "any other reason justifying relief" as long as the motion is made "within a reasonable time") when the motion was filed approximately two years after summary judgment and counsel's failures were the result of a mental illness).

tax debts should not have been discharged, Murphy will not recover his $225,000 in damages because he would not be entitled to them; if the taxpayer succeeds, then the additional delay and attorney's fees in pursuing the matter); the effect of granting or denying reconsideration on the administration of justice (here, the court's institutional interests have been recognized in part by the judgment on dischargeability; the question is how strong the interest is in using that judgment as offensive collateral estoppel rather than making the taxpayer prove liability in this proceeding); and the likelihood of IRS success if reconsideration is granted.  In <u>Roberts</u>, the First Circuit required only that "[a]t first blush, [the movant's] position is plausible"—a standard satisfied here.  978 F.2d at 23.   In that regard, I observe that the Restatement (Second) of Judgments, upon which the First Circuit regularly relies, <u>see</u> <u>In re Iannochino</u>, 242 F.3d 36, 47 (1st Cir. 2001); <u>Troy v. Bay State Comput. Grp., Inc.</u>, 141 F.3d 378, 383 (1st Cir. 1998); <u>Apparel Art Int'l, Inc. v. Amertex Enters. Ltd.</u>, 48 F.3d 576, 583 (1st Cir. 1995), says that one exception to the use of collateral estoppel is when "one of the parties may have been laboring under a mental . . . disability that impeded effective litigation and that has since been removed."  RESTATEMENT (SECOND) OF JUDGMENTS § 28 cmt. j (AM. LAW INST. 1982).  I am not prejudging the outcome in this case, but it is not a foregone conclusion that the supervision structure in the Justice Department and/or the U.S. Attorney's Office should be the sole factor in determining the outcome.

## CONCLUSION

What remains is the question of remedy.  I appreciate the taxpayer's frustration, voiced by his counsel at oral argument, with the amount of time it

has taken to adjudicate this matter (and as he said in his legal memoranda, no court has yet determined that the cognitive impairment affected the AUSA in these bankruptcy proceedings).  I also observe that the two District of Maine bankruptcy judges that had familiarity with this case have retired and that their successors are recused.  At the end of the oral argument, the IRS's lawyer suggested withdrawal of the reference since I now have far more familiarity with the case than any bankruptcy judge to whom it might be assigned (I heard the appeal of the Rule 60(b) request from the final judgment in the first adversary proceeding, the attempted interlocutory appeal of the liability ruling in the second adversary proceeding, and now this appeal).  The taxpayer's lawyer chose not to respond to the suggestion.  Although I have authority to withdraw a reference for cause, <u>see</u> 28 U.S.C.A. § 157(d), I am reluctant to do so except upon hearing the fully-briefed positions of the parties, considering that the Rule 54(b) determination is a discretionary call once the proper factors are canvassed.  That discretion might more properly belong to a bankruptcy judge.

As a result, the final judgment of the bankruptcy court is **VACATED**, the bankruptcy court's denial of the IRS's renewed motion for reconsideration under Rule 54(b) is **VACATED**, and the case is **REMANDED** for further proceedings consistent with this opinion.  I leave it to the parties to determine whether to move for withdrawal of the reference.

**SO ORDERED.**

**DATED THIS 7TH DAY OF SEPTEMBER, 2016**

_____/S/ D. BROCK HORNBY_____
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

## § 7433. Civil Damages for certain unauthorized collection actions

**(a) In general.**--If, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service recklessly or intentionally, or by reason of negligence, disregards any provision of this title, or any regulation promulgated under this title, such taxpayer may bring a civil action for damages against the United States in a district court of the United States. Except as provided in section 7432, such civil action shall be the exclusive remedy for recovering damages resulting from such actions.

**(b) Damages.**--In any action brought under subsection (a) or petition filed under subsection (e), upon a finding of liability on the part of the defendant, the defendant shall be liable to the plaintiff in an amount equal to the lesser of $1,000,000 ($100,000, in the case of negligence) or the sum of--

> **(1)** actual, direct economic damages sustained by the plaintiff as a proximate result of the reckless or intentional or negligent actions of the officer or employee, and
>
> **(2)** the costs of the action.

**(c) Payment authority.**--Claims pursuant to this section shall be payable out of funds appropriated under section 1304 of Title 31, United States Code.

**(d) Limitations.**--

> **(1) Requirement that administrative remedies be exhausted.**--A judgment for damages shall not be awarded under subsection (b) unless the court determines that the plaintiff has exhausted the administrative remedies available to such plaintiff within the Internal Revenue Service.
>
> **(2) Mitigation of damages.**--The amount of damages awarded under subsection (b)(1) shall be reduced by the amount of such damages which could have reasonably been mitigated by the plaintiff.
>
> **(3) Period for bringing action.**--Notwithstanding any other provision of law, an action to enforce liability created under this section may be brought without regard to the amount in controversy and may be brought only within 2 years after the date the right of action accrues.

**(e) Actions for violations of certain bankruptcy procedures.**--

> **(1) In general.**--If, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service willfully violates any provision of section 362 (relating to

i

automatic stay) or 524 (relating to effect of discharge) of Title 11, United States Code (or any successor provision), or any regulation promulgated under such provision, such taxpayer may petition the bankruptcy court to recover damages against the United States.

**(2) Remedy to be exclusive.**--

    **(A) In general.**--Except as provided in subparagraph (B), notwithstanding section 105 of such Title 11, such petition shall be the exclusive remedy for recovering damages resulting from such actions.

    **(B) Certain other actions permitted.**--Subparagraph (A) shall not apply to an action under section 362(h) of such Title 11 for a violation of a stay provided by section 362 of such title; except that--

        **(i)** administrative and litigation costs in connection with such an action may only be awarded under section 7430; and

        **(ii)** administrative costs may be awarded only if incurred on or after the date that the bankruptcy petition is filed.

26 U.S.C.A. § 7433 (2015).

ii

Judge Hoffman's Order on the IRS's second motion to reconsider:

> This isn't fair, the IRS asserts, because it could have proven that the taxes were not dischargeable in the first AP but for the fact, unknown to them at the time, that the AUSA handling the matter was seriously ill and could not competently defend the litigation.  The IRS decries Judge Kornreich's denial of its initial motion for reconsideration because he failed to take this circumstance into account and use it to overturn Judge Haines'[s] invocation of offensive collateral estoppel.  Whether Judge Kornreich specifically addressed the doctrine of offensive collateral estoppel in his order denying the IRS's motion for reconsideration is irrelevant because he most assuredly considered the equitable argument put forth by the IRS that underpins the estoppel issue.   Judge Kornreich denied the previous motion for reconsideration on the basis that the United States Attorney should have supervised his AUSA.   The government admitted at oral argument before Judge Kornreich that if the AUSA had merely been negligent, sloppy or inattentive, it would not be seeking relief.  Judge Kornreich soundly reasoned that the late-discovered mental disability of the AUSA did not justify reconsideration any more than the AUSA's negligence or professional incompetence would have.  Applying the IRS's motion to the flexible standards of Fed. R. Bankr. P. 7054 [incorporating Rule 54], I find no basis to reconsider Judge Haines'[s] partial summary judgment ruling.  The IRS's motion is **DENIED**.

Mem. & Order on Renewed Mot. of U.S. to Recons. at 4-5, <u>Murphy v. I.R.S.</u>, Adv.

No. 11-2020 (Dec. 14, 2015) (Bankr. ECF No. 266) (footnotes omitted).